UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL M. SALVATORE, JR.,

                  Plaintiff,

     -v-                                  3:15-CV-1346

THE UNITED STATES OF AMERICA,
and CHRYSLER GROUP, LLC, a
Delaware Corporation also known as
FCA US LLC,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                             OF COUNSEL:

MICHAEL M. SALVATORE, JR.
Plaintiff, Pro Se
19 Center Street, Apt. 2
Deposit, NY 13754

HON. GRANT C. JAQUITH               CHARLES E. ROBERTS, ESQ.
United States Attorney for the          Ass't United States Attorney
   Northern District of New York
Attorneys for Defendant United States
   of America
100 South Clinton Street
Syracuse, NY 13261

WEBSTER, SZANYI LAW FIRM         BRITTANY A. JONES, ESQ.
Attorneys for Defendant Chrysler Group, LLC   KEVIN A. SZANYI, ESQ.
1400 Liberty Building                      THOMAS S. LANE, ESQ.
Buffalo, NY 14202

DAVID N. HURD
United States District Judge

## **DECISION and ORDER**

On November 11, 2015, plaintiff Michael M. Salvatore, Jr. ("Salvatore" or "plaintiff") filed this civil action pursuant to the Federal Tort Claims Act ("FTCA") against defendants United States of America (the "Government") and the Chrysler Group, LLC ("Chrysler").[1]  According to the complaint, plaintiff suffered physical injuries when he crashed his 1999 Jeep Grand Cherokee, which was manufactured by Chrysler, into the back of a slow-moving convoy of U.S. Army vehicles owned and operated by the Government.

In early 2016, the Government and Chrysler (collectively "defendants") answered Salvatore's complaint and the case proceeded to discovery.  Before long, however, disputes arose between the parties as to the sufficiency of plaintiff's initial disclosures, his responses to interrogatories, and his compliance with other appropriate requests for the production of discoverable information.

On July 15, 2016, Attorney Michelle Rudderow ("Attorney Rudderow"), Salvatore's retained counsel, filed a letter motion explaining to U.S. Magistrate Judge David E. Peebles that plaintiff had recently suffered a stroke.  Attorney Rudderow requested a stay or adjournment of further proceedings until she could determine whether a guardian should be appointed to protect her client's interests.

On July 26, 2016, Judge Peebles considered Attorney Rudderow's request during a telephonic discovery conference.  Although he declined to issue a "formal stay of discovery," Judge Peebles directed Salvatore's counsel to move forward with "any evaluation and/or assessment of the plaintiff" deemed appropriate and, if necessary, to make a formal request

---

[1] Salvatore also named as defendants "John Doe entities 1-X," but those entities were dismissed on June 13, 2017.

for the appointment of a guardian. Judge Peebles held a second telephonic conference on September 27, where Attorney Rudderow indicated her intention to substitute a guardian in place of plaintiff "by stipulation of the parties." At that time, Judge Peebles stayed the remaining deadlines, directed the parties to move forward with "whatever discovery can be completed under the current circumstances," and directed Attorney Rudderow to file a status report in early November.

On November 11, 2016, Attorney Rudderow filed a status report in which she indicated that there "have been significant disagreements and/or difficulty with regard to the appointment of a Guardian for the Plaintiff." According to Attorney Rudderow's filing, she was in the process of scheduling a meeting with plaintiff and "all interested parties" within the next few weeks.

On January 5, 2017, Judge Peebles held another telephonic discovery conference. At that time, Salvatore's counsel represented to the Court that plaintiff's father had agreed to act as his guardian in this proceeding and that they were in the process of preparing a petition to that effect.

On February 3, 2017, Attorney Robert Dwyer ("Attorney Dwyer") advised the Court that Salvatore and his father had retained Attorney Shelby Redmond to handle the necessary guardianship procedure in state court. Attorney Dwyer further advised the Court on March 31 that the petition for guardianship was soon to be filed in the appropriate state court.

Nearly three months later, however, during a June 13, 2017 telephonic discovery conference, Judge Peebles learned that Salvatore's family had "not yet moved for a guardian ad litem to be appointed." Judge Peebles declined to further involve the Court in that quagmire, instead directing the parties to meet and confer to discuss the remaining discovery

issues as well as the scheduling of depositions. Thereafter, counsel for the Government and for Chrysler submitted separate letter motions to Judge Peebles advising of various outstanding discovery disputes and requesting additional guidance from the Court.

On July 19, 2017, Judge Peebles held yet another telephonic discovery conference at which he learned that Salvatore was "refusing to have a guardian ad litem appointed for him" and that "plaintiff's counsel is having a difficult time communicating with him." After soliciting additional information from the parties, Judge Peebles gave plaintiff's counsel permission to file a motion to withdraw as counsel and/or for defendants to file a motion to dismiss for failure to prosecute.

On October 12, 2017, Attorney Dwyer and Attorney Rudderow jointly moved for leave to withdraw as counsel for Salvatore in this proceeding on the basis of an "irreconcilable breakdown in the attorney-client relationship" and plaintiff's "lack of communication and cooperation in the prosecution of his case." Thereafter, Chrysler moved pursuant to Federal Rule of Civil Procedure ("Rule") 41(b) seeking to dismiss this matter in its entirety on the basis of plaintiff's lack of prosecution.

On November 3, 2017, with both motions pending, Attorney Dwyer wrote to the Court requesting a 90-day adjournment "to give plaintiff and potentially his new counsel enough time to review the file and get caught up." That request was granted and the deadline for plaintiff's responsive submission was reset to February 5, 2018.

On November 27, 2017, Judge Peebles granted Attorney Dwyer and Rudderow's joint motion to withdraw as counsel for Salvatore. Judge Peebles directed plaintiff "to notify the court and counsel for all parties, on or before 12/22/2017, concerning whether he will be proceeding *pro se*, and if not of the identity of the attorney who will be representing him." No

responsive submission was received from plaintiff and therefore Judge Peebles entered a text order that deemed plaintiff to be proceeding pro se. Shortly thereafter, the Government filed its own Rule 41(b) motion seeking to dismiss the action based on plaintiff's ongoing failure to prosecute.

On February 20, 2018, after the deadlines for responsive filings with respect to both pending Rule 41(b) dismissal motions had already expired, Salvatore's father—a non-party to this action—filed a letter requesting a 60- to 90-day extension of time in which to respond to defendants' Rule 41 requests. According to this letter motion, plaintiff and his father were in the process of finding another attorney to take the case.

This letter request was granted on February 23, and Salvatore was given until Friday, April 27, 2017 "to file a status report as to whether he has acquired new counsel or shall appear pro se in this action." In addition, because plaintiff's current address of record was incorrect, the Court directed him to file a letter indicating his current address "no later than March 9, 2018." Plaintiff was warned that "failure to comply with all aspects of this order may result in dismissal of this action."

Although these latest deadlines have now come and gone, neither Salvatore, nor anyone else seeking to act on his behalf, has complied with either of them. Accordingly, defendants' Rule 41 motions are ripe for adjudication on the basis of the presently available submissions.

Rule 41(b) provides that a defendant may move "to dismiss the action or any claim against it" where, as here, "the plaintiff fails to prosecute or to comply with . . . a court order." FED. R. CIV. P. 41(b).

"While a harsh remedy, the rule is intended to serve as a rarely employed, but useful, tool of judicial administration available to district courts in managing their specific cases and general caseload."  Lopez v. Comm'r of Soc. Sec., 110 F. Supp. 3d 489, 491 (W.D.N.Y. 2015) (citation and internal quotation marks omitted); see also Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 665 (2d Cir. 1980) (cautioning the rule should be invoked to dismiss only if the district court "is sure of the impotence of lesser sanctions").

To determine whether Rule 41(b) dismissal is warranted, the district court must weigh five factors:

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

Lewis v. Frayne, 595 F. App'x 35, 36 (2d Cir. 2014) (summary order) (citation omitted).

Even accounting for Salvatore's current status as a litigant proceeding in federal court without the benefit of licensed counsel, a review of defendants' submissions confirms that dismissal is warranted under Rule 41(b)'s multi-factor standard.  As defendants explain, significant discovery issues have been outstanding for well over a year now.  And although those issues may in part be chargeable to actions or omissions attributable to plaintiff's now-withdrawn counsel, by all accounts plaintiff himself has contributed in significant part to those delays.

To make matters worse, Salvatore is aware that this action is ongoing but has consistently failed to update his address of record or communicate directly with the Court, frustrating defendants' repeated attempts to contact him for purposes of advancing this

litigation at all.² Although that delay is of relatively short duration (approximately five months) at the moment, a review of the docket report for this action suggests that this latest problem "does not bode well for the timely and efficient resolution" of this case. Middleton v. United States, 2011 WL 7164452 at *5 (E.D.N.Y. June 28, 2011).

Further, Salvatore has been on notice that continued delay of this sort might well result in dismissal of his lawsuit. Even assuming he did not receive this Court's February 23 text order warning him that dismissal was a possibility (due to his own failure to communicate with the Court or update his own address), prior communications from his counsel and from Judge Peebles made clear to plaintiff that his continued engagement in this case was a necessary condition for moving things to an eventual resolution. Cf. Lucas v. Miles, 84 F.3d 532, 535 (2d Cir. 1996) ("[I]t is difficult to imagine how dismissal for unexplained non-compliance [after a warning that non-compliance could result in dismissal] could be an abuse of discretion . . . .").

And defendants are likely to be prejudiced by further delay. The docket report in this matter reflects that defendants have diligently participated in this action but have little to show for it. In particular, continuing to obligate the Government to exert effort attempting to litigate this action (or to continue attempting to communicate with Salvatore, who is nowhere to be found) would be an obvious waste of "time and taxpayer money." Middleton, 2011 WL 7164452 at *6. Equally important, the Court would be prejudiced by further delay, too. See

---

² Salvatore's father, a non-party, recently invited the Court to mail future correspondence to his address instead of his son's location. But it is a *party's* ongoing obligation to "immediately notify the Court" of any change in his *own* address. N.D.N.Y.L.R. 10.1(c)(2). In fact, a party's failure to do so is itself grounds for dismissal. N.D.N.Y.L.R. 41.2(b). If nothing else, the record in this case is clear on one thing: plaintiff himself is aware this action is ongoing but has stopped communicating with the Court.

id. ("A district court must balance the effect of calendar congestion caused by delay against the plaintiff's due process right to be heard.").

Finally, no lesser sanction than dismissal with prejudice is appropriate here. Judge Peebles has already expended significant time and effort attempting to usher this case through discovery in the face of repeated delays attributable to Salvatore, not defendants. Short of dismissal, there is little the Court can reasonably do at this point besides assess some form of monetary sanction or issue a stern admonishment to plaintiff about his continuing obligation to at least attempt to participate in the civil action he filed. But monetary sanctions would be inappropriate to assess against a pro se litigant, and stern admonishment from the Court has repeatedly proven ineffective in motivating plaintiff to act. Accordingly, defendants' Rule 41(b) motions will be granted.

Therefore, it is

ORDERED that

1. The United States of America's motion to dismiss for lack of prosecution is GRANTED;

2. Chrysler Group, LLC's motion to dismiss for lack of prosecution is GRANTED; and

3. Plaintiff Michael M. Salvatore, Jr.'s complaint is DISMISSED with prejudice.

The Clerk of the Court is directed to terminate any pending motions, enter a judgment accordingly, and close the file

IT IS SO ORDERED.

_____
United States District Judge

Dated: May 2, 2018
        Utica, New York.